UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Harvey Weisman, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Amaya Inc., David Baazov, and Daniel Sebag,<br><br>Defendants. | Case No. ____________________<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>Jury Trial Demanded |

Plaintiff Harvey Weisman ("Plaintiff"), by and through his attorneys, alleges upon personal knowledge as to himself, and upon information and belief as to all other matters, based upon the investigation conducted by and through his attorneys, which included, among other things, a review of documents filed by Defendants (as defined below) with the United States Securities and Exchange Commission (the "SEC"), news reports, press releases issued by Defendants, and other publicly available documents, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a federal securities class action on behalf of all investors who purchased or otherwise acquired Defendant Amaya Inc. ("Amaya" or the "Company") common stock between June 8, 2015 through March 23, 2016, inclusive (the "Class Period"). This action is brought on behalf of the Class for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

2. Amaya, a Canadian company traded on exchanges in both Canada and the United States, purports to be a provider of technology-based products and services in the global gaming

and interactive entertainment industries and is the world's largest online poker company. The Company began trading on the Nasdaq stock exchange on June 8, 2015.

3. Prior to Amaya's listing on the Nasdaq exchange in June 2015, the Company acquired, for approximately $3.8 billion USD, the online gambling operator The Oldford Group, which owned and operated brands such as PokerStars and Full Tilt Poker. Leading up to the announcement of that transaction, Amaya's shares nearly doubled in value.

4. In connection with Amaya's acquisition of The Oldford Group, which closed in August 2014, the Autorité des marchés financiers (the "AMF"), the securities regulatory authority in the Province of Quebec, launched an investigation into reports of insider trading by, among others, David Baazov, who serves as Amaya's Chief Executive Officer ("CEO"), Chairman, and President.

5. Just days prior to Amaya's listing on the Nasdaq exchange, the Company filed a Form 6-K representing to investors that the Company's internal investigation of the allegations that Baazov and others had engaged in insider trading found no wrongdoing, and assured investors that it believed no charges would follow.

6. On March 23, 2016, David Baazov was criminally charged with insider trading by the AMF for "aiding with trades while in possession of privileged information, influencing or attempting to influence the market price of the securities of Amaya inc., [sic] and communicating privileged information." That day, Amaya confirmed that five charges had been brought against Baazov by the AMF.

7. On this news, Amaya's stock plummeted $3.07, more than 21%, to close at $11.18 per share on March 23, 2016, resulting in more than $300 million in losses to investors.

8. Throughout the Class Period, Amaya made materially false and misleading statements and failed to disclose material facts about the Company, including that Amaya's Chairman, President, and CEO David Baazov was engaged in an insider-trading scheme, in which he provided privileged information to third parties and artificially inflated the price of the Company's securities. Nor did the company properly disclose that it lacked adequate internal controls. As a direct result of these misstatements and omissions, Plaintiff and other Class members have suffered significant financial harm.

## JURISDICTION AND VENUE

9. The federal law claims asserted herein arise under §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, as well as under the common law.

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and § 27 of the Exchange Act, 15 U.S.C. § 78aa.

11. This Court has jurisdiction over each Defendant named herein because each Defendant is an individual or corporation who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

12. Venue is proper in this District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1931(b), as substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts complained of herein, including the dissemination of materially false and/or misleading information occurred in substantial part in this Judicial District. The Company's shares were also traded on the Nasdaq stock market, which is located in this Judicial District.

13. In connection with the acts, omissions, conduct and other wrongs in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce including but not limited to the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

14. Plaintiff Harvey Weisman is an individual residing in Maryland. Plaintiff acquired and held shares of the Company at artificially inflated prices during the class period and has been damaged by the revelation of the Company's material misrepresentations and material omissions.

15. Defendant Amaya is a Canadian corporation with its principal place of business at 7600 Trans Canada Highway, Pointe-Claire, Quebec, Canada. The Company trades on the Nasdaq stock exchange under the ticker symbol "AYA", and claims to be a "leading provider of technology-based products and services in the global gaming and interactive entertainment industries."

16. Defendant David Baazov ("Baazov") is Amaya's Chairman, President, and Chief Executive Officer ("CEO") and has held those roles at all relevant times to this litigation.

17. Defendant Daniel Sebag ("Sebag") is Amaya's Chief Financial Officer ("CFO") and has held that role at all times relevant to this litigation.

18. Collectively, Baazov and Sebag are referred to throughout this complaint as the "Individual Defendants."

19. The Individual Defendants, because of their positions at the Company, possessed the power and authority to control the content and form of the Company's annual reports, quarterly reports, press releases, investor presentations, and other materials provided to the SEC, securities analysts, money and portfolio managers and investors, *i.e.*, the market. The Individual

Defendants authorized the publication of the documents, presentations, and materials alleged herein to be misleading prior to its issuance and had the ability and opportunity to prevent the issuance of these false statements or to cause them to be corrected. Because of their position with the Company and hits access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### ***Background***

20. Amaya purports to be a provider of technology-based products and services in the global gaming and interactive entertainment industries. It is the world's largest online poker company. Amaya owns gaming and related consumer businesses and brands including PokerStars, Full Tilt, BetStars, StarsDraft, the European Poker Tour, PokerStars Caribbean Adventure, Latin American Poker Tour and the Asia Pacific Poker Tour. According to Amaya, these brands have more than 100 million cumulative registered customers globally and collectively form the largest poker business in the world, comprising online poker games and tournaments, live poker competitions, branded poker rooms in casinos around the world, and poker programming created for television and online audiences. Through certain of its brands, the Company also offers non-poker gaming products, including casino, sportsbook and daily fantasy sports.

21. Amaya's stock did not trade on a United States stock exchange until June 8, 2015, when the Company's stock was first listed on the Nasdaq Global Select Market.

22. In June 2014, prior to its listing on a U.S. exchange, Amaya announced that it was acquiring The Oldford Group, which owned and operated brands such as PokerStars and Full Tilt Poker, in a deal valued at $3.8 billion USD.

23. Leading up to the announcement of its deal with The Oldford Group, Amaya's stock price increased considerably, more than doubling in price.

24. In June 2015, Amaya confirmed that the securities regulatory authority in the Province of Quebec, the AMF, was conducting an investigation into the trading of Amaya securities surrounding the announcement of the Oldford Group acquisition. The investigation concerned, among others, Defendants Baazov and Sebag's involvement with aiding in trades while in possession of privileged information and influencing, or attempting to influence the market price of Amaya.

***Amaya's Materially False and Misleading Statements***

25. The Class Period in this action begins on June 8, 2015, when Amaya first listed its stock on the Nasdaq Global Select Market.

26. Amaya's website provides, and has provided at all relevant times to this litigation, a "Code of Business Conduct," in which the Company represents to its shareholders that its employees are prohibited from disclosing confidential information, including in connection with insider trading:

> Employees, officers and directors must safeguard the Company's Confidential Information. "Confidential Information" includes, but is not limited to, trade secrets, know how, records, data, plans, strategies, processes, business opportunities and ideas relating to present and contemplated products and services and financial affairs of the Company, its customers, its suppliers and/or other employees. Confidential Information is information which is not generally known to the public.
>
> Employees, officers and directors are prohibited from disclosing Confidential Information or other information which might impair the Company's competitive

position or which might violate the private rights of individuals, enterprises or institutions without appropriate authorization in accordance with the Company's Disclosure, Confidentiality and Trading Policy. If in doubt about whether information is Confidential Information or whether any other information may be disclosed, it should be assumed that the information is confidential and may not be disclosed without appropriate authorization. The above rules also apply to information which the Company has obtained from a customer or supplier (or prospective customer or supplier) on condition of confidentiality, particularly as a failure to protect such information may damage relationships with customers, suppliers or others and may result in legal liability for the Company. These confidentiality obligations continue even after an individual's service as an employee, officer or director of the Company has ceased.

If the decision is made to disclose Confidential Information to any person or entity outside of the Company (such as a potential vendor or business partner), it should be done only after appropriate confidentiality agreements are executed. These agreements must document the need to maintain confidentiality of the Confidential Information that is disclosed and copies of all confidentiality agreements must be forwarded to the Legal Department. The amount of Confidential Information shared with any person or entity outside of the Company should, in any case, be kept to the minimum necessary to address the applicable business need. Notwithstanding, the foregoing shall not derogate from the policies, procedures and protections set forth and provided in the Company's Whistleblower Policy. A copy of such policy is available from the Legal Department.

All employees, officers and directors are responsible and accountable for the integrity and protection of the Company's business information (including electronic mail and voice mail) and must take the appropriate steps to protect such information. Employees, officers and directors should always be alert to and seek to prevent inadvertent disclosures which may arise in either social conversations or in normal business relations with suppliers and customers. Documents containing sensitive data and Confidential Information should be handled carefully during working hours and must be properly secured at the end of the business day.

Securities laws contain prohibitions against trading in securities of the Company while in possession of material information regarding the Company that has not been generally disclosed to the public and against informing others of such undisclosed material information.

All employees, officers and directors must also adhere to the Company's procedures and practices on confidentiality, disclosure and insider trading as set out in the Company's Disclosure, Confidentiality and Trading Policy. A copy of such policy is available from the Legal Department.

*Available at:* http://www.amaya.com/pdf/amaya-code-of-business-conduct-may-2015.pdf.

27. On a Form 6-K filed by Amaya with the SEC on June 1, 2015, the Company stated that, among other things, its own internal investigation of the allegations that Baazov and others had engaged in insider trading found no wrongdoing, and assured its shareholders that it believed no charges would follow:

> "To date, the AMF has neither threatened nor initiated any legal proceedings against the Corporation or its employees. Amaya has also not been provided with any evidence that any officers, directors, or other employees violated any securities laws or regulations," said Ben Soave, retired Chief Superintendent of the Royal Canadian Mounted Police, a member of Amaya's Compliance Committee and an advisor to the Corporation's Board of Directors since 2012. "Nonetheless, as we previously announced, the Corporation conducted an internal review, supervised by its independent board members with the assistance of external legal counsel, which thoroughly reviewed the relevant internal activities surrounding the Oldford Group acquisition. This review found no evidence of any violations of Canadian securities laws or regulations."
>
> "Amaya's independent board members have been following this issue very closely and we fully support David Baazov, Daniel Sebag and Amaya's management team," said Dave Gadhia, Amaya's Lead Director and independent board member, and the former Executive Vice Chairman and CEO of Gateway Casinos & Entertainment Inc. "The Corporation is not aware of any reasonable basis for proceedings against Amaya or its directors, officers or employees. We will continue to cooperate with the AMF and intend to provide further updates on the investigation if and when it is permitted."
>
> "We have been cooperating with the AMF since the announcement of our acquisition of Oldford Group," said Amaya's Chairman and CEO David Baazov. "I believe that any concerns that I or other Amaya officers or directors violated any Canadian securities laws are unfounded and we are confident that at the end of its investigation, the AMF will come to the same conclusion."

28. On August 13, 2015, Amaya caused to be filed a Form 6-K with the SEC for the quarter ended June 30, 2015, which provided the Company's quarterly financial results. The 6-K stated that "[T]here has been no change in Amaya's ICFR [internal control over financial reporting] that occurred during the period beginning on April 1, 2015 and ended on June 30,

2015 that has materially affected, or is reasonably likely to materially affect, Amaya's ICFR." Amaya's August 13, 2015 6-K filing also contained signed certifications by Defendants Baazov and Sebag, stating that the financial information contained in the quarterly report was accurate and that the Company had disclosed any material changes to its internal control over financial reporting.

29. On November 10, 2015, Amaya caused to be filed with the SEC a Form 6-K for the quarter ended September 30, 2015, which provided the Company's quarterly financial results. The 6-K stated that "[T]here has been no change in Amaya's ICFR [internal control over financial reporting] that occurred during the period beginning on July 1, 2015 and ended on September 30, 2015 that has materially affected, or is reasonably likely to materially affect, Amaya's ICFR." Amaya's November 10, 2015 6-K filing also contained certifications, attached by Exhibits as Form 52-109F2, signed by Defendants Baazov and Sebag, providing that the financial information contained in the quarterly report was accurate and that the Company had disclosed any material changes to its internal control over financial reporting.

***The Truth Emerges—Defendant Baazgov is Charged for Insider Trading***

30. On March 23, 2016, the Quebec securities regulatory authority AMF issued a press release stating that that, among other individuals and companies, Defendant Baazov, Amaya's Chairman, President, and CEO had been charged with five charges relating to insider trading for "aiding with trades while in possession of privileged information, influencing or attempting to influence the market price of the securities of Amaya inc., [sic] and communicating privileged information.".

31. The Wall Street Journal reported that the charges against Baazov were the result of a multi-agency investigation, spurred by whistleblowers:

> The charges are the culmination of the largest insider trading investigation in Canadian history. The AMF, the Royal Canadian Mounted Police and Quebec police have been working with U.S. regulators and others since late 2014 to probe why hundreds of investors bet so heavily on struggling Amaya's stock ahead of its 4.9 billion Canadian dollar (US$3.8 billion) takeover of PokerStars.
>
> At the time, Amaya was a financially stretched, minor online-gambling company struggling with losses and a slumping stock price. Despite its challenges, Amaya's stock more than doubled to C$14 a share ahead of its June 2014 cash-and-stock PokerStars deal.
> ****
> The AMF has said in previous court documents that its investigation was sparked by two whistleblowers. As part of its investigation, the regulator has executed search warrants to obtain documents at the offices of Canaccord Genuity Group Inc. and the Montreal branch of Manulife Securities.

32. Also on March 23, Amaya filed a Form 6-K with the SEC confirming the charges against Baazov:

> The AMF has charged Amaya's Chairman and Chief Executive Officer, David Baazov, for aiding with trades while in possession of privileged information, influencing or attempting to influence the market price of Amaya securities, and communicating privileged information, but has made no allegation of wrongdoing by Amaya or any of its subsidiaries or other directors or officers.
>
> The charges relating to communicating privileged information involve allegations relating to a former financial advisor to Amaya, and the charges relating to influencing or attempting to influence the market price of Amaya securities involve allegations relating to that same advisor and an employee. Mr. Baazov denies the allegations against him, and Amaya believes they are without merit and expects Mr. Baazov will be fully exonerated.

33. As a direct result of this news, Amaya's stock fell by $3.07, more than 21%, to close at $11.28 on March 23, 2016, representing hundreds of millions in losses to investors.

## CLASS ACTION ALLEGATIONS

34. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all persons and entities who purchased or otherwise acquired Amaya common stock between June 8, 2015 and March 23, 2016, inclusive.

Excluded from the Class are Defendants, directors and officers of the Company, as well as their families and affiliates.

35. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

36. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

a. Whether the Exchange Act was violated by Defendants;

b. Whether Defendants omitted and/or misrepresented material facts;

c. Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

d. Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

e. Whether the price of the Company's stock was artificially inflated; and

f. The extent of damage sustained by Class members and the appropriate measure of damages.

37. Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct alleged herein.

38. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests that conflict with those of the Class.

39. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**FRAUD ON THE MARKET**

40. Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine that, among other things:

a. Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

b. The omissions and misrepresentations were material;

c. The Company's common stock traded in efficient markets;

d. The misrepresentations alleged herein would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

e. Plaintiff and other members of the class purchased the Company's common stock between the time Defendants misrepresented or failed to disclose material facts and the time that the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

41. At all relevant times, the markets for the Company's stock were efficient for the following reasons, among others: (i) the Company filed periodic public reports with the SEC; and (ii) the Company regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news ire services and through other wide-ranging public disclosures such as communications with the financial press, securities analysts, and other similar reporting services. Plaintiff and the Class relied on the price of the Company's common stock, which reflected all information in the market, including the misstatements by Defendants.

## NO SAFE HARBOR

42. The statutory safe harbor provided for forward-looking statements under certain conditions does not apply to any of the allegedly false statements pleaded in this Complaint. The specific statements pleaded herein were not identified as forward-looking statements when made.

43. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

## LOSS CAUSATION

44. On March 23, 2016, the Company disclosed that its Chairman, President, and CEO, David Baazov, had been charged by Quebec securities officials AMF for insider trading, contrary to its public statements made beginning on June 1, 2015 and described above. At the time the market closed on March 23, 2016, the Company's stock declined by $3.07 or more than 21%. This decline is directly attributable to the March 23, 2016 corrective Form 6-K filing confirming that Defendant Baazov had been charged for insider trading.

## CAUSES OF ACTION

### Count I
**Violation of § 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder (Against All Defendants)**

45. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

46. During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

47. Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 in that they (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon those who purchased or otherwise acquired the Company's securities during the class period.

48. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for the Company's common stock. Plaintiff and the Class would not have purchased the Company's common stock at the price paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

**Count II**
**Violation of § 20(a) of the Exchange Act**
**(Against The Individual Defendants)**

49. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

50. The Individual Defendants acted as controlling persons of the Company within the meaning of § 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions at the Company, the Individual Defendants had the power and authority to cause or prevent the Company from engaging in the wrongful conduct complained of herein. The Individual Defendants were provided with or had unlimited access to the Amaya's SEC filings and other statements alleged by Plaintiffs to be false or misleading both prior to and immediately after their publication, and had the ability to prevent the issuance of those materials or to cause them to be corrected so as not to be misleading.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) determining that this action is a proper class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class as defined herein, and a certification of Plaintiff as class representative pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointment of Plaintiff's counsel as Lead Counsel;

(b) awarding compensatory and punitive damages in favor of Plaintiff and the other class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including pre-judgment and post-judgment interest thereon.

(c) awarding Plaintiff and other members of the Class their costs and expenses in this litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements; and

(d) awarding Plaintiff and the other Class members such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in this action of all issues so triable.

Dated: March 31, 2016

Respectfully submitted,

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

/s/ Gregory M. Nespole

Gregory M. Nespole (GN 6820)
nespole@whafh.com
Matthew M. Guiney
guiney@whafh.com
270 Madison Avenue
New York, New York 10016
Telephone: (212) 545-4600
Facsimile: (212) 545-4653
*Attorneys for Plaintiff*

**BLOCK & LEVITON LLP**
Jeffrey C. Block, Esq.
Jacob A. Walker, Esq.
Bradley J. Vettraino, Esq.
155 Federal Street
Suite 400
Boston MA 02110
Tel.: (617) 398-5600
Fax (617) 507-6020
Jeff@blockesq.com
Jake@blockesq.com
Bradley@blockesq.com

*Additional Counsel*

/786121

**PLAINTIFF'S CERTIFICATION OF SECURITIES**
**FRAUD CLASS ACTION COMPLAINT**

I, **Harvey Weisman**, hereby certify that the following is true and correct to the best of my knowledge, information and belief:

1. I have reviewed, and authorize the filling on my behalf of, the class action complaint against Amaya Inc.
2. I did not purchase the securities which are the subject of the complaint at the direction of counsel, or in order to participate in any private action arising under the federal securities laws.
3. My transactions in the Company's securities during the Class Period are as follows:

| Date | Transaction | No. of shares | Price per share |
|---|---|---|---|
| 11/04/2015 | Buy | 250 | $23.00 |
| 11/10/2015 | Buy | 200 | $15.95 |
| 12/16/2015 | Buy | 200 | $15.02 |

4. I am willing to serve as representative party on behalf of the class in this action, including providing testimony at deposition and trial, if necessary.
5. During the three-year period preceding the date of my signing this Certification, I have never sought to be appinted nor have I ever been appointed as lead plaintiff or class representative in any class action arising under securities laws of the United States.
6. I will not accept any payment for serving as a representative party on behalf of the Class beyond my pro rata share of any possible recovery, except for an award, as ordered or approved by the court, for reasonable costs and expenses (including lost wages) directly relating to my representation of the Class.

Signed under the penalties of perjury on **03/31/2016**.

Signature:

